### 15562. GEORGIA RAILWAY & POWER CO. *v.* SIMMS.

STEPHENS, J. 1. Where two street-cars are at the terminus of the line, in a public street, standing tandem, with a space between them of about seven or eight feet, a person who goes between them does not thereby become either a trespasser or a volunteer, since he is in a public street where he has a right to be. Going between the cars may, however, under the circumstances, amount to negligence. If he, without authority, after placing himself between the cars, intermeddles with the mechanism of one of them by adjusting its trolley and thereby preparing the car for a return trip, he does not by so intermeddling, or by going between the cars solely for that purpose, deprive himself of the status of one lawfully between the cars. If he thereby becomes a volunteer, he is a volunteer only as to the act of adjusting the trolley.

2. A volunteer is deprived of a right to recover for any injury received while he is occupying the status of a volunteer only because the fact of his being a volunteer is a contributory cause of the injury and without it the injury would not have occurred. Where, in such a case as that stated above in paragraph 1, the person acting as a volunteer in adjusting the trolley of one of the cars is injured by the other car rolling down the track and coming upon him and crushing him between the cars, he is not debarred from a recovery against the street-car company owning and operating the cars, where the injury is proximately caused by the negligence of the company in permitting the car to roll down upon him, and where his voluntary act in adjusting the trolley is in no wise a proximately contributing cause of the injury. *Davis* v. *Savannah Lumber Co.*, 11 *Ga. App.* 610 (75 S. E. 986).

3. Although the agents of the street-car company, in charge of the car upon which the injured person was adjusting the trolley, may have had no authority to permit him to adjust it, and although evidence of such permission by any of the motormen or conductors operating cars which turned back at this point may be irrelevant, as tending to destroy the injured person's character as a volunteer in this respect, nevertheless, evidence that the injured person and others, who frequently boarded street-cars at this point, had, for some time immediately prior thereto, been accustomed, with the consent and knowledge of the motormen and conductors of the street-cars, to run out and assist such employees in adjusting the trolleys and preparing the cars to make return trips, is, in a suit by the injured person against the street-car company to recover for such injuries, relevant as tending to establish a duty upon the part of the street-car company, through its agents operating the cars, to anticipate the dangerous situation of the plaintiff, and also as tending to show negligence on its part under all the circumstances. *Ashworth* v. *Southern Ry. Co.*, 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592); *Mandeville Mills* v. *Dale*, 2 *Ga. App.* 607 (58 S. E. 1060).

4. There being evidence that the plaintiff had worked prior to the injury and received certain compensation therefor, and therefore evidence as to his earning capacity, the admission in evidence of the annuity tables, and the charge of the court thereon, were not error upon the ground that the plaintiff was a youth at school and had not adopted a trade or profession.

5. A charge to the jury as to a contention not supported by the evidence is not necessarily error. It was not error to state, as one of the contentions of the plaintiff made in the petition, that the defendant's servants were negligent in failing for a time, after the injury, to stop the flow of blood from the plaintiff's wounds, although there may have been no evidence to substantiate such allegation of negligence. *Matthews* v. *Seaboard Air-Line Railway*, 17 *Ga. App.* 664 (87 S. E. 1097).

6. The court did not err in admitting evidence that the motorman who operated the car that rolled down upon the plaintiff was an extra motorman and had been with the defendant company about seven or eight weeks, and evidence that another motorman, the day before the injury, had trouble as respects the operation of the brakes upon this particular car, such evidence being relevant as tending to show inefficiency or lack of experience on the part of the first motorman in control of the car, and to establish negligence on the part of the defendant as charged by the petition.

7. The statement which the motorman of the car which rolled down upon the plaintiff and caused the injury was heard to make, to the effect that his "brakes would not work," and that he tried to reverse the car and "it would not work," was made immediately after the impact which injured the plaintiff, and was properly admitted as a part of the res gestæ.

8. Evidence of a motorman who had operated the car which ran down upon the plaintiff, to the effect that if the air-brakes on this car had been good brakes and had been properly set up, they would have held the car, was not objectionable as being a conclusion. The condition

stated was so manifestly pregnant with the conclusion stated that the admission in evidence of the conclusion of the witness was not error.

9. A statement made by one of the street-car motormen, that the air-brakes upon the car which ran against the plaintiff leaked, and that the car "took a fit and ran away," was not subject to the objection that it was a conclusion.

10. An extrajudicial statement, which the motorman who on the day before the injury operated the car that ran upon the plaintiff made when referring to the occurrence, that the air-brakes on that car leaked, and that the car "took a fit and ran away," was relevant as tending to impeach this motorman's testimony, previously given, wherein he had denied making such a statement. The testimony wherein he had denied making the statement relative to the air-brakes leaking and the car running away was relevant as tending to impeach the testimony which he had delivered to the effect that when he ran the car he had no trouble with the brakes, and that he did not know what caused the car to run away.

11. A remark made by counsel for the plaintiff, to the effect that the witness could come down if counsel for the defendant objected to certain testimony from the witness, was not objectionable as putting the defendant in the unfavorable light before the jury of attempting to suppress evidence. It was not error for the court to overrule the defendant's motion for a mistrial upon that ground.

12. The verdict found in the sum of $37,500 can not, as a matter of law, be regarded as excessive, in view of the fact that the plaintiff, who was a youth eighteen years of age, with a long expectancy in life, was so injured that his leg had to be amputated above the knee, and that he lingered for a long time in a hospital, undergoing numerous dangerous and painful operations necessitated by the injury, and will go through life suffering pain and the mortification of being disabled and disfigured, and with impaired earning capacity.

13. The charge was in all respects fair to the defendant, and was not subject to the objection that the court anywhere therein expressed an opinion on the facts.

14. There was evidence from which it could be inferred that the injuries received by the plaintiff were proximately caused by the negligence of the defendant in permitting one of its cars, by reason of insecure or defective brakes, to run down upon him, and not by the act of the plaintiff in going between the cars or by his act in adjusting the trolley.

15. The verdict found for the plaintiff was authorized, and no error of law appears. *Judgment affirmed. Jenkins, P. J., and Bell, J., concur.*

DECIDED FEBRUARY 28, 1925.

Action for damages; from DeKalb superior court—Judge Hutcheson.   March 10, 1924.

Application for certiorari was denied by the Supreme Court.

*Colquitt & Conyers,* for plaintiff in error.

*Alston, Alston, Foster & Moise, Branch & Howard,* contra.