44208. ATLANTA TALLOW COMPANY, INC. v. FIREMAN'S FUND INSURANCE COMPANY.

ARGUED JANUARY 9, 1969—DECIDED MARCH 20, 1969.

*Westmoreland, Hall & O'Brien, C. Wilbur Warner, Jr., Donald E. O'Brien,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Edward E. Dorsey, James H. Keaten,* for appellee.

DEEN, Judge. The insurance policy covered, under Coverage A, loss of money and securities by destruction, disappearance or wrongful abstraction within the premises of the insured mercantile company, and under Coverage B insured against loss of money or securities, by destruction, disappearance or wrongful abstraction outside the premises, subject to the provision that at the time of such destruction, disappearance or wrongful abstraction the property is being *conveyed,* either by a messenger or an armored vehicle company. No armored car was involved here.

A messenger, under the contract definition, means the insured, an officer or partner of the insured, or any "employee in the regular service of and duly authorized by the insured to have the *care* and *custody* of the property outside the premises." It is admitted that the employee, who was engaged in transporting money from the bank to the company premises, was a messenger and *duly authorized* to have the money in his care and custody. Equally, the majority of this court is of the opinion that it was in fact in the process of being conveyed from the bank to the employer's premises at the time when the theft occurred, even though the messenger stopped for a 10-minute interval en route (leaving the money in a box in a locked glove compartment within his locked automobile while he went into a restaurant to buy a sandwich) and the automobile was burglarized during his absence. To convey means to carry or transport. Webster, New International Dictionary, 3rd Ed. It cannot reasonably be said that the money was not being transported or carried from the bank to the company premises at the time of the theft, and there is no policy provision which required the automobile to be in actual motion at the time of the disappearance or abstraction of the goods. Neither is there any provision that the money must be carried on the messenger's person rather than in the vehicle of conveyance. To so limit coverage in the absence of clear and unambiguous policy provisions would be violative of the cardinal rule that insurance policies are to be construed in favor of rather than against the insured. *Massachusetts Benefit Life Assn. v. Robinson*, 104 Ga. 256 (2) (30 SE 918, 42 LRA 261).

The trial court erred in granting the defendant's motion for summary judgment.

*Judgment reversed. All the judges concur in the judgment except Eberhardt, J., who dissents. Deen, J., concurs specially, joined by Bell, P. J., Jordan P. J., and Pannell, J. Hall, J., concurs specially, joined by Felton, C. J., and Whitman, J.*

DEEN, Judge, concurring specially. The able Judge of the Civil Court of Fulton County who heard and decided this case held in the final order: "The court's ruling in this matter is based on the ruling of the Georgia Court of Appeals in Cleveland

Avenue Liquor Store, Inc. v. Home Ins. Co., 115 Ga. App. 864." The *Cleveland Ave. Liquor Store* case involved an insurance policy with identical provisions, and identical fact situation, except that in that case the messenger stopped at his home to eat lunch and left the money in an unlocked automobile. The fact that the trial judge here understandably felt that he was bound by the decision in the *Cleveland Ave. Liquor Store* case granting summary judgment to the insurance company amply demonstrates to my mind the practical necessity of overruling it. In that case (*Cleveland Ave. Liquor Store v. Home Ins. Co.*, 115 Ga. App. 864 (156 SE2d 202)), the sole issue for decision was correctly stated as "whether the money was stolen 'while being conveyed by a messenger' within the meaning of the insurance contract." The opinion, however, then stated: "We find it unnecessary to determine whether the money was being 'conveyed' at the time of the theft, for we conclude that the custody required by the insurance contract was lacking." P. 867. As noted in the majority opinion here, it is not necessary for the employee, in order to be a messenger, to have actual manual possession of the money at the time of its theft or disappearance, but only that he be "in the regular service of and duly authorized by the insured to have the care and custody." Cases from other jurisdictions involving the words "care and custody," "while in the custody of" designated persons, as well as "while being conveyed," "in transit," "in actual transit," and so on give no such drastic limitation to the meaning of the words.

2. Insofar as it imports the idea of actually being in transit, it was held in National Fire Ins. Co. v. Davis, (Tex. Civ. App.) 179 SW2d 316, where under the applicable policy the goods were insured only "while in the custody of the insured" and "in actual transit" that where the driver left the car unattended with the motor running while he stopped for lunch, and an unauthorized person drove it off and overturned it, damaging the merchandise, the loss of the latter was covered. The court relied on the definition of "Custody" in 25 CJS 88: "It means to have in charge or safekeeping, connotes control, and includes as well, *although it does not require* the element of physical or manual possession, implying a temporary physical control merely, and responsibility

for the protection and preservation of the thing in custody." (Emphasis supplied.) In Chemstrand Corp. v. Maryland Cas. Co., 266 Ala. 626 (98 S2d 1), covering theft "only while the property insured is in the custody of . . . public truckmen" where it was proved that the theft of the merchandise occurred *after* it fell to the highway from a van when the tailgate jerked open in transit, the court found that "this provision was not inserted in the policy to except from liability an incident such as occurred in this cause, but rather to designate the methods by which the insured goods could be transported." Where the policy excludes liability unless the theft is committed in the presence of a custodian, actual physical presence is required. *Great American Indem. Co. v. Southern Feed Stores*, 51 Ga. App. 591 (181 SE 115). "However, a policy covering property while it is in the care and custody of designated persons does not require that such persons have actual physical possession and control of the property at the time of the loss." 45 CJS 959, Insurance, § 886; Birgbauer v. Aetna Cas. & Surety Co., 251 Mich. 614 (232 NW 403); Fox West Coast Theaters v. Union Indemnity Co., 167 Wash. 319 (9 P2d 78); American Indem. Co. v. Swartz, 250 F2d 532; J. J. Newberry Co. v. Continental Cas. Co., 229 Cal. App. 2d 728 (40 Cal. Rptr. 509); Kamar Fur. Corp. v. Century Ins. Co., 142 N. Y. S. 2d 904.

I am authorized to state that Presiding Judges Bell and Jordan and Judge Pannell concur in this special concurrence.

HALL, Judge, concurring specially. I concur in the judgment reached by the majority opinion; however, I do not agree that *Cleveland Avenue Liquor Store v. Home Ins. Co.*, 115 Ga. App. 864 (156 SE2d 202), should be overruled. That case is distinguishable on its facts. It held: "No sufficient reason appears why the money in the plastic zipper moneybag could not have been manually carried by McIntyre into his home, where it would have been covered under a policy provision relating to the home of the messenger, or why it was necessary to leave the moneybag on the seat of an unlocked car. When he left it unprotected in the car, parked on a public street, as an open invitation to any who passed along to take it, it was not in his custody, within the provisions of the policy." P. 868. In the present

case the money was still in the messenger's protective custody (locked glove compartment of a locked car) during a 10-minute interval while in the process of being conveyed.

This insurance policy provides protection for property being conveyed by a messenger. Custody (actual or protective) is a necessary element of the process of conveying. How can one be conveying an object which he has neither on his person nor within his protective custody? Realism and common sense tell us that a messenger in the process of conveying a package does not have to eat, perform his daily body functions and at the same time be grasping his package in order for the same to be in his custody. Realism and common sense also tell us that when a messenger leaves his package totally unprotected in an open car on a public street while he eats lunch in his home, it cannot be said that the messenger has protective custody of the package and is thereby in the process of conveying the same.

The requirements of the insuring agreement were not present in the *Cleveland* case. They are present in the case sub judice.

I am authorized to state that Chief Judge Felton, and Judge Whitman concur in this special concurrence.

EBERHARDT, Judge, dissenting. It seems to me that the majority have grounded their holding upon the language defining the word "messenger" in the policy, and not upon the insuring agreement itself.

The applicable insuring agreement, covering losses outside the insured's premises, provides that the insurer will "pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises *while being conveyed* by a messenger or any armored motor vehicle company, or by theft while within the living quarters in the home of any messenger."

True enough, the word messenger is defined to mean "the insured, a partner therein or an officer thereof, or any employee thereof who is in the regular service of and duly authorized by the insured to have the care and custody of the insured property outside the premises." This simply describes and delimits the individuals who may serve as messengers within the coverage. As to employees, it covers only those who are in regular service

and, additionally, have been duly authorized to have care and custody of the money or securities. This does not impose coverage in situations where the employee, though regularly employed and authorized to have care and custody of money and securities, may have lost it at a time or under circumstances not within the insuring clause. The loss must have occurred while the money or securities were being conveyed by him.

It is conceded here that the employee involved was regularly employed and that he was duly authorized to have the care and custody of money and securities of the insured. The only provisions of the contract which require construction, if they do, are the phrases "care and custody," and "while being conveyed."

We have heretofore researched the same problem in the case of *Cleveland Avenue Liquor Store v. Home Ins. Co.*, 115 Ga. App. 864 (156 SE2d 202), where we concluded that the protective care and custody of *money* contemplated by the contract is actual personal possession by the messenger. Likewise, "while being conveyed" has uniformly been held by courts of other jurisdictions dealing with the matter to require personal possession of the messenger. That this is a reasonable and proper conclusion as to the meaning of the terms is borne out by the fact that protection is extended to money and securities "while being conveyed" by the insured's messenger or by "any armored motor vehicle company." The care and custody of the messenger, described along with that of an armored motor vehicle company, under the rule of *ejusdem generis*, or under the maxim *noscitur a sociis*, imports that the care or custody be of like character—not the same, of course, but *protective* in nature. It has generally been considered that this can appear only where the care or custody of the messenger has been that of personal possession. Cf. *Great American Indem. Co. v. Southern Feed Stores*, 51 Ga. App. 591 (181 SE 115). We came to the same conclusion in the *Cleveland Avenue Liquor Store* case and I can see no reason to do otherwise here.

The provisions of the contracts in that case and in this are the same, or substantially so. The facts have some similarity and, as Judge Hall points out, some differences. However, when the messenger parked the car on the lot of a sandwich shop, left

the money in it—though the car may have been locked—and went inside to buy a sandwich, as I see it, he was not then "conveying" the money. It was simply stored and locked.

That there is a difference in the treatment to be accorded money or securities and other types of property is a matter too generally and commonly known to admit of cavil. Money in the hands of a thief is generally not identifiable and is immediately negotiable.

The cases cited by Judge Deen do not require a different result. In Kamar Fur. Corp. v. Century Ins. Co., 142 N. Y. S. 2d 904, a clothing salesman left the racks of samples in his locked hotel room while he went for lunch and the room was burglarized. He could not have been expected to carry the racks of clothing with him. These are different in nature from money. In American Indem. Co. v. Swartz, 250 F2d 532, a recovery was held authorized where the messenger was held up while in the car and the money, lying beside her on the seat, was taken, it having been "under the constant observation of the authorized messenger and within her reach" at all times after she received it. The court dealt with an on-the-premises robbery (not involved here) in Fox West Coast Theaters v. Union Ind. Co., 167 Wash. 319 (9 P2d 78) and J. J. Newberry Co. v. Continental Cas. Co., 229 Cal. App. 2d 728 (40 Cal. Rptr. 509). In Birgbauer v. Aetna Cas. & Surety Co., 251 Mich. 614 (232 NW 403) the facts are somewhat more similar to those of the case here. A diamond salesman stopped pursuant to instructions to pick up a diamond gauge. He left a supply of uncut diamonds in a locked brief case, in his locked car, and stepped into the front of the place, 15 feet from the car, when he was held up and forced to surrender the keys to the car and the brief case. But he had not left these out of his sight and gone on a personal mission.