120 So.2d 70

Andrew MONTELEONE

v.

AMERICAN EMPLOYERS' INSURANCE COMPANY.

No. 43763.

April 25, 1960.

James A. Comiskey, New Orleans, for plaintiff-appellant.

Deutsch, Kerrigan & Stiles, Gerald J. Gallinghouse, William A. Glennon, Jr., New Orleans, for defendant.

McCALEB, Justice.

This is a suit on a "money and securities" insurance policy for recovery of $2,160 which was stolen from plaintiff's home in a burglary occurring on February 6, 1956. Plaintiff additionally prays for penalties and attorney's fees provided by R.S. 22:658.

Plaintiff owns and operates a supermarket at 4100 Canal Street in the city of New Orleans. The insurance policy involved is a broad form theft policy covering losses of money and securities from inside the market premises and also protecting against "Loss Outside the Premises" under certain circumstances stated therein.

■ The facts are these: On February 5, 1956, at approximately 11:30 p. m., plaintiff closed his supermarket and drove across town to his residence at 2522 General Pershing Street, taking with him two bags of money attributable to his business operations. Upon arrival, he placed the bags of money in a cedar chest in his bedroom. The following morning about 4:45 a. m. plaintiff removed from the chest one bag, counted the money, which amounted to $3,491.27, and prepared a bank deposit slip in that amount. The other bag, containing $2,160, he left in the chest. Plaintiff then left his house with the $3,491.27 and drove to his store, which he opened

for business after putting the money in his safe.

Across the street from the market was the Mid City Branch of the Hibernia Bank, where plaintiff did all of his banking business. About 9:15 a. m. plaintiff took the $3,491.27 to the bank across the street and deposited it. He then returned to his store and continued to conduct his business until about 11:45 a. m., when he received a call informing him that his house had been burglarized. He returned to his home and found that, in addition to jewelry and other personal belongings, the $2,160, which had been left in the cedar chest, had been stolen.

Thereafter, plaintiff made claim against defendant for indemnity asserting that the loss was covered under the following provision of the policy:

"To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger."

Upon defendant's refusal to pay the claim, plaintiff brought this action, which, after a trial on its merits, was dismissed by the district court. Hence this appeal.

The sole issue presented for determination is whether plaintiff's loss is covered under the above quoted clause, which insures against theft of money outside the

premises "while being conveyed by a messenger".[1]

Plaintiff contends that the money, when stolen, was being conveyed by him to the bank, because he fully intended to return to his home later in the day, pick up the $2,160, and take it to the bank for deposit. He asks that we adopt a liberal interpretation of the words "being conveyed" so as to find their meaning the same as the words "in transit", adverting to decisions which have held that property insured while "in transit" is covered not only during periods of actual movement, but also while temporarily at rest during a continuous undertaking.

On the other hand, defendant asserts that the language of the clause at issue is plain and unambiguous and the words must be given their usual and commonly accepted meaning. To fortify this position, defense counsel directs our attention to decisions wherein words identical to those here in question have been held explicit and construed so as to deny relief to plaintiffs who have suffered a loss under circumstances closely analogous to those involved in the case at bar.

None of the cases cited by either litigant are Louisiana decisions, for there seems to be no jurisprudence in this state which has construed wording in an insurance policy which is similar to that now before us. However, it is well settled in Louisiana that policies of insurance are contracts between the parties and, while all ambiguities must be construed in favor of the insured and against the insurer, courts have no authority to alter terms of policies under the guise of interpretation when they are couched in unambiguous language. See Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95; 29 So.2d 483 and authorities there cited. Accordingly, it must first be determined whether there is any ambiguity in the meaning of the words "while being conveyed by a messenger".

Counsel for plaintiff contends in his brief that the word "conveyed", as used in the policy, is ambiguous because it "suggests the idea of passing from one place to another place" while "the insurance contract is silent on whether the act of conveying must be fast or slow, direct or indirect, without any temporary interruption or with any temporary interruption, or with or without periodic rests".

Webster's New International Dictionary defines the word "convey" as follows:

"Convey * * * To accompany; esp. to convoy, conduct, guide or lead.

1. The policy defines "messenger" as follows: "The word 'messenger' means the insured, a partner therein or an officer thereof, or any employee thereof who is in the regular service of and duly authorized by the insured to have the care and custody of the insured property outside the premises."

*Obs.* 2. To bear from one place to another; to carry, transport * * * 4. To cause to pass from one place or person to another; to serve as a medium or conduit in carrying (anything) from one place or person to another; to transmit; to transfer, * * *"

The above-cited definitions of the word "convey" all suggest not only "the idea of passing from one place to another place" but also the idea that the thing which is "passing from one place to another. place" is being accompanied to its destination. It does not seem to be necessary to an understanding of the word "convey" that there be any indication as to whether the conveying is fast or slow, direct or indirect, or with or without temporary interruptions or periodic rests, for the word standing alone is completely understandable and not a bit vague. In any event, the addition of the words "by a messenger" after the word "conveyed" clarifies, without a doubt, the meaning of the clause which plaintiff claims is ambiguous.

The word "messenger" is defined by Webster as meaning "one who bears a message or does an errand".[2] Therefore, the addition of the phrase "by a messenger" to the word "conveyed" denotes conveyance by a person on an errand who keeps the property in his personal custody at all times. The conclusion that personal custody is required is strengthened by the language of Item 4 of the policy here in question, which reads as follows: "Not more than one messenger will have custody of insured property outside the premises at any one time * * *."

Our view that the clause in question is not ambiguous is in harmony with the decisions of the courts of several other jurisdictions which have construed the exact words here in controversy as used in similar contracts of insurance. American Indemnity Co. v. Swartz, 8 Cir., 250 F.2d 532; Trad Television Corp. v. Hartford Accident & Ind. Co., 35 N.J.Super. 36, 113 A.2d 47; Philip Blum & Co. v. Standard Acc. Ins. Co., 336 Ill.App. 354, 83 N.E. 2d 605; J & C Drug Co. v. Maryland Casualty Co., Mo.App., 298 S.W.2d 516. On the other hand, plaintiff has not pointed to a decision from any jurisdiction which holds that the language of this policy is equivocal[3] or should be held to have the

2. Although the word "messenger" is defined in the policy, that definition merely designates who *may be* a "messenger" and not when one of the designated persons is acting in the capacity of a messenger. It could not logically be argued that every one of the designated persons was *always* a "messenger", so that the insured would be covered even though one of them took cash or securities off the premises when not engaged on an errand.

3. Counsel for plaintiff places much reliance on the case of International Harvester Co. v. National Surety Co., 7 Cir., 44 F.2d 746, 750, where the insured was allowed recovery for a theft from its premises of payroll money which had

same meaning as the term "in transit" which, as used in insurance policies, is broad enough to imply a contractual intention to cover the insured articles until they reach their ultimate destination. See Hailey v. Oregon Short Line R. Co., D.C., 253 F. 569 and Underwood v. Globe Indemnity Co., 245 N.Y. 111, 156 N.E. 632, 54 A.L.R. 485.

In the case at bar, the fact that plaintiff had *intended* to return to his home later in the day and take the $2,160 to the bank cannot be employed to provide coverage under the policy on the theory that the money was still being conveyed by plaintiff, in his capacity as messenger. On the contrary, the insuring clause does not cover intentions but only actualities, that is, while the money is being conveyed by the messenger. And, as already shown, the clause in question, when viewed in the light of other provisions of the policy, clearly indicates that the conveying messenger must have the money in his personal custody at the time of the loss which obviously was not the case here.

The judgment is affirmed.

been placed in a chest and left alone in a locked room prior to being distributed. But the policy in that case covered losses occasioned while the messenger or paymaster was receiving, *handling*, conveying and distributing the money. The Court reasoned that the word "handling" was broad enough to cover the money in-

tended for the payroll "from the time it was separated for that purpose until received by the employees". It did not find it necessary to construe the word "conveying", as used in the policy. Hence we find the decision inapplicable to the matter at hand.