295 So.2d 894 (1974)
ALLEN & ALLEN, INC., Plaintiff-Appellee,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant.
No. 12306.
Court of Appeal of Louisiana, Second Circuit.
May 28, 1974.
Rehearing Denied July 1, 1974.
Writ Refused September 13, 1974.
*895 Gist, Methvin & Trimble by David A. Hughes, Alexandria, for defendant-appellant.
Kermit M. Simmons by Jacque D. Derr, Winnfield, for plaintiff-appellee.
Before AYRES, BOLIN and PRICE, JJ.
BOLIN, Judge.
Allen & Allen, Inc., sued State Farm Fire and Casualty Company under a "Money and Securities Broad Form" policy, seeking recovery of a loss sustained when money, collected by plaintiff's employee, was stolen from a safe in a van truck belonging to plaintiff. From judgment in favor of plaintiff for $1499.44, the amount of the loss, defendant appeals. We affirm the judgment of the lower court.
It was stipulated the interrogatories and answers thereto contained a correct statement of the facts and the case was tried without further testimony. Plaintiff, whose headquarters were located in Winnfield, Louisiana, operated a vending machine and service business in the Monroe-West Monroe area. Larry Guillory was employed by Allen to service the machines. The employer furnished him with a Ford van truck, equipped with a safe in which to keep the coins collected from the machines. Guillory lived in a mobile home at the rear of a warehouse in West Monroe, Louisiana.
On March 5, 1973, Guillory made his rounds and accumulated $1499.44 from the machines in Ouachita Parish. After accumulating the coins Guillory placed them in the safe in the Ford truck. At the end of the day he returned to his mobile home at the rear of the warehouse, parked the truck near the warehouse, approximately 50 feet from the mobile home where he spent the night. The coins were left in the safe. At approximately six o'clock the following morning, March 6, 1973, Guillory entered the truck for the purpose of commencing a new day's work, and discovered the coins had been removed from the safe during the night.
State Farm admits the policy, which contained "Money and Securities" coverage for loss outside the premises, was in effect at the time of the loss but specifies as error the trial judge's conclusion the loss was insured under the policy. The pertinent clause in the policy provides:
"Coverage BLoss Outside the Premises:
"To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger or any armored motor vehicle company, or while within the living quarters in the home of any messenger. (Emphasis added)
* * *"
The sole issue is whether the money disappeared "while being conveyed by a messenger".
Under the heading "Additional Declarations" are two requirements pertinent to the interpretation of the policy. Item A3 provides that not more than one messenger shall have custody of the insured property outside the premises at any one time. Item A5 states:
"The insured property while outside the premises in the custody of a messenger shall be conveyed in VARIOUS [vehicles] employed for the exclusive use of the messenger and his guard, if any, throughout the entire trip." (Emphasis added)
"Messenger" is defined in the policy as the insured, a partner therein or an officer *896 thereof, or any employee thereof who is in the regular service of and duly authorized by the insured to have the care and custody of the insured property outside the premises. It seems undisputed that Guillory is a messenger as defined in the policy.
The trial judge, in his written reasons for judgment, quoted Item A5 and found this clause required the money to be conveyed in a vehicle furnished by Allen for the exclusive use of the messenger throughout the entire trip; that Allen had equipped the van with a safe as a safety precaution; that the entire trip began from the point at which the coins were collected by the messenger and ended upon delivery to the insured's place of business in Winnfield. He concluded the fact Guillory spent the night at home did not change the terms of the policy and that plaintiff was entitled to recover its loss. Quoting from the opinion in Monteleone v. American Employers' Insurance Co., 239 La. 773, 120 So.2d 70 (1960) the trial judge stated:
"It does not seem to be necessary to an understanding of the word `convey' that there be any indication as to whether the conveying is fast or slow, direct or indirect, or with or without temporary interruptions or periodic rests, ...."
Appellant cites and relies upon two Louisiana cases and a Georgia decision, all of which have interpreted insurance policies covering loss of money or securities outside the premises of the insured. These decisions were adverse to plaintiffs. In Monteleone, supra, plaintiff owned a grocery store in New Orleans and on the evening prior to the occurrence of the theft he took two bags of money from the store to his home where he placed them in a cedar chest. The following morning he took one bag with him to deposit in a bank and left the other bag in the chest in his home. Later in the day he was advised his home had been burglarized and upon returning to his home discovered the second bag of money had been stolen. The question presented was whether the loss would come within the phrase "being conveyed by a messenger" as used in the applicable policy provision which provided that the insurance company would pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger. [The policy contained no provision for coverage "while within the living quarters in the home of any messenger".]
The Supreme Court resorted to Webster's New International Dictionary for definitions of "messenger" and "convey", and denied recovery, concluuding:
"The clause in question, when viewed in the light of other provisions of the policy, clearly indicates that the conveying messenger must have the money in his personal custody at the time of the loss which obviously was not the case here." (Emphasis added)
In Sansone v. American Insurance Company, 245 La. 674, 160 So.2d 575 (1964), the policy contained a loss provision clause identical to the first paragraph of "Coverage B" of the instant case. Plaintiff in Sansone owned and operated a restaurant in Shreveport. In the late afternoon of January 17, 1962, he delivered $2500 to the restaurant manager who was to deposit the money the following morning. The manager left the restaurant about 6:30 p.m., proceeded "downtown" to see some friends; thence to a private social club on Cross Lake, arriving there about 10:00 p. m. During the stay at the club he transferred the money to his coat pocket, removed his coat for comfort and it was hung on a rack in an adjoining room. Approximately one and one-half hours later he became concerned about the money, located his coat on the rack, and found the money missing. The sole issue presented was whether the money disappeared "while being conveyed by a messenger" within the terms of the insurance policy. The court, citing Monteleone, concluded the money *897 was not being conveyed by a messenger and denied recovery, observing:
"Significant, in our opinion, is the fact that the restaurant manager had turned aside from his function as a messenger to engage in an evening of social activities. At the time the money disappeared, he was participating in a dice game at a social club. He had delivered the coat containing the money to a porter, who removed it to an adjoining room."
In the cited Georgia case, Hawkins Iron and Metal Company, Inc. v. Continental Insurance Company (1973), 128 Ga.App. 462, 196 S.E.2d 903, it was held that a burglary loss of insured firm's daily monetary receipts, while stored overnight in a locked glove compartment of the locked truck of insured's president, which truck was parked on the driveway of his residence, was not covered under a "Money and Securities Broad Form" policy. The court stated the money was not stored in the relative safety "within the living quarters of the home of any messenger", nor was it "being conveyed by a messenger". The court refused to extend the holding of a previous Georgia decision which had allowed recovery where the money was stolen from the locked glove compartment of a locked car while the messenger had parked for 10 minutes to purchase a sandwich to be eaten later. Atlanta Tallow Company, Inc. v. Fireman's Fund Insurance Company, 119 Ga.App. 430, 167 S.E. 2d 361 (1969). From our reading of these cases we are unable to determine whether the policies involved contained the requirement that the money should be conveyed in a vehicle furnished by the insured for specific use of the messenger during the entire trip. In any event we are not bound by the Georgia court's interpretation of insurance policies.
The trial judge distinguished the facts in the instant case from those in the two cited Louisiana cases, observing that here there was no turning aside as in Sansone, nor intention to return as in Monteleone. No reference is made to the Georgia decision which apparently was not cited in the lower court. He found that from the point of collection to the delivery at Allen's place of business constituted one trip and the policy required the coins be conveyed in the van throughout the entire trip. We agree with his conclusion that the loss occurred while the coins were being conveyed as contemplated by the terms of the policy.
In Sansone the question was whether the money was in the custody of the messenger; in Monteleone the question was whether the money, left in a cedar chest in plaintiff's home, was being conveyed. Neither of the cases involved the use of a vehicle nor the other policy provisions and facts before us. Here the money was being conveyed by a messenger in a vehicle furnished for the exclusive use of the messenger (Guillory) throughout the entire trip. The money having disappeared from this vehicle during the trip, it follows the policy afforded coverage for this loss.
For the reasons assigned the judgment of the lower court is affirmed at appellant's cost.